## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DOUG MARTIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMVEST OSAGE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | Case No. 04-CV-0572-CVE-PJC |
| | ) | |
| THE DEPARTMENT OF THE INTERIOR, et al., | ) | |
| | ) | |
| Crossclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMVEST OSAGE, INC., et al., | ) | |
| | ) | |
| Crossclaim Defendants. | ) | |

### OPINION AND ORDER

This matter comes before the Court on the United States' Motion to Dismiss Counts VIII, IX, and X of the Amended Complaint (Dkt. #65), filed on February 17, 2005.[1]  Plaintiff Doug Martin ("Martin") has filed an amended complaint, alleging in part that the Environmental Protection Agency (the "EPA") has contributed to the widespread pollution of Osage County, Oklahoma by failing to enforce the Clean Water Act ("CWA") there.  The United States has filed a motion to dismiss the claims against the United States Environmental Protection Agency; Stephen L. Johnson, Acting Administrator; Region VI of the Environmental Protection Agency; and Richard

---

[1]     This matter was originally assigned to Judge Sven Erik Holmes.  The case was reassigned to Judge H. Dale Cook on March 16, 2005, and reassigned to the undersigned on June 21, 2005.

Greene, Regional Administrator (collectively, "the EPA" or "defendant") for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).[2] Because these are the only claims pending against them, these defendants request that they be dismissed as parties.

## I.

Martin, an Indian of Osage and Cherokee descent, owns and resides on land in Osage County, Oklahoma. Much of Martin's land in Osage County was obtained by his family through federal allotment. Martin has engaged in real estate development, primarily of his land in Osage County, as his principal means of income for over twenty-five years.

Defendant AMVEST Osage, Inc. ("AMVEST") owns and operates natural gas wells in Osage County, including two wells on Martin's land. Martin alleges that, in connection with these and other wells, AMVEST and its affiliates have constructed roads, a pipeline, and access routes to other wells on his land and throughout Osage County. Martin further alleges that the gas excavation

---

[2] The United States filed a Motion to Dismiss Plaintiff's Second Claim (Dkt. # 14), based on the original complaint, on October 29, 2004. The Court denied the United States' original motion to dismiss in the Order (Dkt. # 62) entered on February 17, 2005. Plaintiff now argues that because the Court denied the United States' original motion to dismiss, it should deny the instant motion based on the "law of the case" doctrine. (See Pl.'s Resp. to Mot. to Dismiss, Dkt. # 73, at 11.) The Court does not agree. The original complaint was filed by Martin, who was proceeding *pro se* at the time, and was lacking in detail. Specifically, the complaint did not set forth the specific provisions of the CWA under which Martin was making his claims, nor did it contain the claim that specific findings had been made by the EPA regarding violations of the CWA by other parties. Thus, defendant did not have the opportunity to fully develop its arguments, and the exact issues presented in the instant motion were not squarely before the Court. The Court concluded that a motion to dismiss should not be granted <u>at that time</u>, <u>based on the original complaint</u>, which was filed by a *pro se* plaintiff. Because the original complaint was filed by a *pro se* plaintiff, the Court construed the complaint liberally and gave plaintiff (who had retained counsel since filing the original complaint) the opportunity to file an amended complaint setting forth the specific provisions of the CWA which he claims were violated by the EPA. That motion is now before the Court.

activities of AMVEST and its affiliates have contributed to the pollution of the waterways in Osage County in violation of the CWA.  In particular, Martin claims that AMVEST has failed to obtain a National Pollutant Discharge Elimination System ("NPDES") permit as required for certain activities being carried out on his property.[3]

With regard to the United States, Martin alleges that the EPA has investigated the oil and gas excavation activities in Osage County and has "made findings that the AMVEST Defendants and John Doe oil companies have [violated] and are violating the Clean Water Act with their activities on the Plaintiff's property and at other locations."  (Am. Compl. ¶ 52, Dkt. # 57, at 12.)  Plaintiff further claims that, despite having made such findings, the EPA has failed to take enforcement action against AMVEST.  Plaintiff claims that the EPA's failure to take enforcement action against AMVEST under these circumstances violates the CWA.

In Count VIII of the amended complaint, Martin alleges that the EPA has failed to fulfill an allegedly mandatory duty under § 308 of the CWA, codified at 33 U.S.C. § 1318, to require the owners and operators of point sources in Osage County to "maintain records, make reports, install, use, and maintain monitoring equipment or methods (including where appropriate, biological monitoring methods), and sample effluents."  (Am. Compl. ¶ 151, Dkt. # 57 at 32.)  In Count IX, Martin claims that the EPA has failed to fulfill its allegedly mandatory duty under § 309(a)(1) and (3) of the CWA, codified at 33 U.S.C. § 1319(a)(1) and (3), to take enforcement action after finding

---

[3]     Section 402 of the CWA allows discharges of pollutants to be authorized by a NPDES permit.  Essentially, the permit provides effluent limitations applicable to the individual discharger, based upon technological requirements and applicable water quality standards.  (See Def.'s Mot. to Dismiss, Dkt. # 65, at 3.)  The NPDES permits also include the specific requirements for the permittee regarding  record keeping, monitoring, and reporting.  (See id.)

that there has been a violation of the CWA.  In Count X, Martin alleges that the EPA has failed to fulfill its allegedly mandatory duties under § 309(a)(2) of the CWA, codified at 33 U.S.C. § 1319(a)(2), which applies when a state or Indian tribe administers the NPDES program pursuant to the EPA's approval under § 1342 of the CWA.  Plaintiff asserts that all of the duties allegedly violated by the EPA are mandatory in nature.  Martin requests injunctive relief for all of his claims against the EPA in the form of an order from the Court compelling the EPA to enforce the CWA in Osage County.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ramirez v. Department of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must determine whether the plaintiff can establish that the court has jurisdiction over the defendant.  For purposes of making this determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  Ramirez, 222 F.3d at 1240;  Robbins v. Bureau of Land Mgmt., 252 F. supp. 2d 1286, 1291 (D. Wyo. 2003) (same standard applies to a motion attacking the complaint on its face under Fed. R. Civ. P. 12(b)(1)).  However, the Court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).  "The issue is not whether the plaintiff will ultimately prevail, but whether [he] is entitled to offer evidence to support its claims." Cooper Mfg. Corp. v. Home Indem. Co., 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001).

4

### III.

In the instant case, Martin brought suit under 33 U.S.C. § 1365(a)(2), also known as the

CWA "citizen suit" provision.  This section authorizes any citizen to bring suit "against the

Administrator where there is alleged a failure of the Administrator to perform any act or duty under

this chapter which is not discretionary with the Administrator."  33 U.S.C. § 1365(a)(2).  The EPA

contends that the duties enumerated by Martin in Counts VIII, IX and X of the amended complaint

are discretionary in nature, and therefore do not fall under the waiver of immunity contained in §

1365(a)(2).  Defendant also contends that its activities in Osage County do not fall under §

1319(a)(1) or (2), which applies when a state or Indian tribe administers the NPDES program

pursuant to the EPA's approval under § 1342 of the CWA.  Martin counters that the enumerated

duties are not within the Administrator's discretion, and therefore do fall within the ambit of §

1365(a)(2), and that the EPA's activities in Osage County are covered by § 1319(a)(1) and (2).  With

regard to Count VIII, the EPA argues that § 1318 of the CWA does not impose a mandatory duty

that the EPA has failed to perform, and that Martin has failed to comply with the notice provisions

of the CWA.  The Court will address each count separately.

A.      <u>Count VIII</u>

In Count VIII, Martin alleges that the EPA has failed to fulfill its duties under § 1318 of the

CWA.  Section 1318(a)(A) provides that, <u>whenever required to carry out the objective of the CWA</u>,

> the Administrator shall require the owner or operator of any point source to (i)
> establish and maintain such records, (ii) make such reports, (iii) install, use, and
> maintain such monitoring equipment or methods (including, where appropriate,
> biological monitoring methods), (iv) sample such effluents . . . and (v) provide such
> other information as he may reasonably require . . .

5

33 U.S.C. § 1318(a)(A).  Thus, the plain language of the provision appears to leave to the Administrator's discretion the decision of when the enumerated requirements are necessary to fulfill the objectives of the CWA.  Moreover, § 1318 does not authorize enforcement action.  Rather, it is one of the provisions that is enforceable under § 1319, which is entitled "Enforcement."  For the reasons set forth below, the Court finds that the EPA's enforcement authority under § 1319 is discretionary, rather than mandatory, and plaintiff has therefore failed to establish jurisdiction over the claim set forth in Count VIII.  Accordingly, the Court finds that dismissal of Count VII is warranted under Fed. R. Civ. P. 12(b)(1).  Because the Court has found that the EPA's duties under § 1318 are discretionary, and therefore do not provide the basis for jurisdiction under § 1365(a)(2), the Court need not reach defendant's argument that plaintiff provided inadequate notice of his claim under Count VIII.

## B.     Count IX

In Count IX, Martin claims that the EPA has failed to fulfill its duties under § § 1319(a)(1) and (3) of the CWA.  The Court will address each subsection in turn.

Section 1319(a)(1) authorizes the Administrator to take enforcement action

[w]henever, on the basis of any information available to him, the Administrator finds that any person is in violation of any condition or limitation which implements [certain sections] of this title in a permit issued by a State under an approved permit program under section 1342 or 1344 of this title . . .

33 U.S.C. § 1319(a)(1) (emphasis added).  Thus, this provision applies only when a State is administering an NPDES program.  See Save the Valley, Inc. v. EPA, 99 F. Supp. 2d 981, 984 (S.D. Ind. 2000).  In the instant case, Martin has alleged that the EPA itself is administering the NPDES program in Osage County.  (See Am. Compl. ¶ 168, Dkt. # 57, at 36.)

However, Martin appears to suggest that the word "State" in § 1319(a)(1) should be read to include the agency itself, rendering § 1319(a)(1) applicable in this case.  Martin offers no authority for this proposition, and the Court finds that it is without merit.[4]  Accordingly, because the NPDES program in question is run by the EPA, rather than the State, the Court finds that § 1319(a)(1) does not apply to Martin's claims and therefore cannot form a basis for jurisdiction under 33 U.S.C. § 1365(a)(2).  The Court will now turn to § 1319(a)(3).

Section 1319(a)(3) provides as follows:

> Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [certain permit conditions], he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

33 U.S.C. § 1319 (a)(3).  Thus, "[t]he threshold condition for enforcement set forth in § 1319(a)(3) is that the Administrator 'finds' a violation."  Sierra Club v. Whitman, 268 F.3d 898, 902 (9th Cir. 2001).  In the instant case, Martin has alleged that such a finding was made.  Defendant concedes that the Court must accept this allegation as true in considering the motion to dismiss.[5]

However, defendant argues that once the Administrator has made a finding of a violation, the decision of whether to exercise the corresponding duty to enforce is entirely within the discretion

---

[4]     While the CWA does define "State" as including Indian tribes, the definition does not include the EPA.  See 33 U.S.C. § 1362(3).  Martin appears to suggest that the Court should interpret "State" as including the EPA in Osage County because "there has been no delegation of authority to the Osage tribe and because the State of Oklahoma cannot implement these rules within the Osage Reservation."  (Pl.'s Resp. to Mot. to Dismiss, Dkt. # 73, at 8.)  However, as stated above, Martin offers no authority in support of this argument.

[5]     Because the Court accepts plaintiff's assertion that the necessary finding was made as true, there is no need to examine evidence outside of the pleadings.  Accordingly, the Court need not convert defendant's motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56.

of the Administrator.  Because the CWA citizen suit provision authorizes federal courts to entertain suits "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is <u>not discretionary</u> with the Administrator,"  33 U.S.C. § 1365(a)(2) (emphasis added), defendant argues that the Court lacks jurisdiction to hear the instant case.  The Court agrees.

It is settled law that there is a presumption that a decision not to enforce is within the agency's discretion, unless Congress has clearly indicated otherwise.  <u>See</u>, <u>e.g.</u>, <u>Heckler v. Chaney</u>, 470 U.S. 821, 837-38 (1985); <u>Amigos Bravos v. EPA</u>, 324 F.3d 1166, 1171 (10th Cir. 2003); <u>Sierra Club v. Whitman</u>, 268 F.3d at 902.  The Supreme Court has set forth the reasons that an agency's decision not to enforce is generally unsuited for judicial review:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise.  Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.  An agency generally cannot act against each technical violation of the statute it is charged with enforcing.  The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

<u>Heckler</u>, 470 U.S. at 831-32.

Defendant argues that these principles apply to the instant case, and so the presumption that the enforcement decision is left to the agency's discretion should apply.  Defendant also contends that the presumption is not overcome with regard to this provision, because Congress has not clearly indicated that the enforcement decision is not left to the discretion of the agency.

Martin counters that the plain language of § 1319(a)(3) is enough to overcome the presumption that the decision of whether to enforce is left to agency discretion.  He argues that, once

a finding has been made that a violation has occurred, the duty to enforce is mandatory.  Martin

bases his argument on the following statutory language:

> Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [certain permit conditions], he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

33 U.S.C. § 1319 (a)(3) (emphasis added).

The Court rejects Martin's argument that the above language reflects clear congressional

intent to overcome the presumption that enforcement decisions are left to agency discretion.  While

"[i]t is true that 'shall' in a statute generally denotes a mandatory duty . . . . [n]onetheless, the use

of 'shall' is not conclusive."  Sierra Club v. Whitman, 268 F.3d at 904 (internal citation omitted).

Rather, "shall" may sometimes be the equivalent of "may," especially when the word is contained

in a statutory provision concerning prospective agency action.  Id.; see also Amigos Bravos, 324

F.3d at 1171 ("Despite the 'he shall' language, the weight of authority is that [§] 1319(a)(3) does

not impose a mandatory duty on the Administrator.").  The Court must determine the meaning of

the word "shall" in a statute by examining the objective of the statute, as indicated by the statutory

structure and legislative history.  Id.  In the instant case, the Court finds that the structure and

legislative history of § 1319(a)(3) indicate that the decision of whether to take enforcement action

under this provision is left to agency discretion.[6]

---

[6]  While it has not ruled directly on this issue, the Tenth Circuit has indicated its agreement with the Court's finding that § 1319(a)(3) does not limit the discretion of the Administrator. See Amigos Bravos, 324 F.3d at 1171 ("The view that [§ 1319(a)(3)] does not restrict the Administrator's discretion is in keeping with the Supreme Court's pronouncement of 'the general unsuitability for judicial review of agency decisions to refuse enforcement.'") (internal citation omitted).

First, the Court agrees with the Ninth Circuit's finding that "the structure of [§] 1319 suggests that Congress did not intend the enforcement provisions of § 1319(a)(3) to be mandatory." Id. Section 1319(a)(3) gives the Administrator the option to "bring a civil action in accordance with subsection (b) of this section," 33 U.S.C. § 1319 (a)(3), if he or she finds that a violation has occurred.  Section 1319(b) provides that "[t]he Administrator is <u>authorized</u> to commence a civil action for appropriate relief . . . for any violation for which he is <u>authorized</u> to issue a compliance order under subsection (a) of this section."  33 U.S.C. § 1319(b) (emphasis added).  This language of authorization indicates that Congress intended for the Administrator to retain discretion in deciding how and when to enforce the CWA.  Moreover, the general purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  When an agency is charged with such a sweeping goal, then certainly the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities," and a decision not to enforce must be left to the sound discretion of the agency. <u>Heckler</u>, 470 U.S. at 831-32.

Second, the Court finds that the legislative history suggests that Congress intended for the enforcement decision under § 1319(a)(3) to be left to the discretion of the agency.  The Conference Committee report indicates that the Senate bill required the Administrator to issue a compliance order or to bring a civil suit against a known violator, but that in the bill as adopted, "the Administrator is <u>authorized</u> rather than <u>required</u> to initiate civil actions or criminal proceedings." S. Conf. Rep. 92-136 at 131-32 (1972), <u>reprinted</u> <u>in</u> 1972 U.S.C.C.A.N. 3776, 3809 (emphasis added); <u>see also</u> <u>Sierra Club v. Whitman</u>, 268 F.3d at 904.  Moreover, as noted by the Ninth Circuit,

the discussion surrounding the predecessor to the CWA indicates that Congress intended for the Administrator to use her discretion in deciding when to exercise her enforcement powers:

> . . . [T]he authority of the Federal Government should be used judiciously by the Administrator in those cases deserve [sic] Federal action because of their national character, scope, or seriousness.  The committee intends the great volume of enforcement actions be brought by the State.  It is clear that the Administrator is not to establish an enforcement bureaucracy but rather to reserve his authority for the cases of paramount interest.

Sierra Club v. Whitman, 268 F.3d at 904 (quoting S. Rep. No. 92-414 (1971), reprinted in 1972 U.S.C.C.A.N. 3668, 3730).  Thus, the Court finds that both the structure and the history of § 1319(a)(3) indicate that the decision of whether to take enforcement action under that provision is left to the agency's discretion.[7]  Because the CWA citizen suit provision authorizes federal courts to entertain suits against the Administrator only "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator,"  33 U.S.C. § 1365(a)(2) (emphasis added), the Court finds that § 1319(a)(3) does not provide the Court with jurisdiction over plaintiff's claims.

Based on the above reasoning, the Court finds that dismissal of Count IX of the amended complaint is warranted because the allegations contained therein fail to establish jurisdiction.

---

[7]    Even if the Court were to find that the structure and legislative history of § 1319 were inconclusive with regard to the discretion left to the agency, the Administrator's interpretation of the provision would still stand as a permissible construction of the statute.  See Dubois v. Thomas, 820 F.2d 943, 950 (8th Cir. 1987) (citing Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 844-45 (1984)).

C.      **Count X**

In Count X of the amended complaint, Martin asserts that the EPA has failed to fulfill its

duties under § 1319(a)(2) of the CWA.  Section 309(a)(1) applies where

> the Administrator finds that violations of permits conditions or limitation as set forth
> in paragraph (1) of this subsection [State-administered programs] are so widespread
> that such violations appear to result from a failure of the <u>State</u> to enforce such permit
> conditions or limitations effectively . . .

33 U.S.C. § 1319(a)(2) (emphasis added).  Thus, as is the case with §1319(a)(1), this provision

applies only where the State (or a tribe) is administering an NPDES program.  As noted above,

Martin has alleged in his amended complaint that the EPA itself is administering the NPDES

program in Osage County.  For the reasons set forth in Part A, <u>supra</u>, the Court finds that this

provision does not apply to the instant case, and therefore § 1319(a)(2) does not provide a basis for

jurisdiction.  Accordingly, the Court finds that dismissal of Count X of the amended complaint is

warranted.

## IV.

**IT IS THEREFORE ORDERED** that the United States' Motion to Dismiss Counts VIII,

IX, and X of the Amended Complaint (Dkt. # 65) is hereby **granted**; Counts VIII, IX, and X of the

Amended Complaint (Dkt. # 57) are dismissed with prejudice to refiling.  Because these are the only

counts pending against the United States Environmental Protection Agency; Stephen L. Johnson,

Acting Administrator; Region VI of the Environmental Protection Agency; and Richard Greene,

Regional Administrator in this matter, these defendants are hereby dismissed from the case.

**DATED** this 14th day of July, 2005.

_____

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT