UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUG MARTIN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 04-CV-0572-CVE-PJC |
| | ) |
| AMVEST OSAGE, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| and | ) |
| | ) |
| THE DEPARTMENT OF THE INTERIOR, et al., | ) |
| | ) |
| Crossclaim Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMVEST OSAGE, INC., et al., | ) |
| | ) |
| Crossclaim Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is plaintiffs' Motion to Certify a Clean Water Act Class and an Osage Arbitration Class (Dkt. # 131). Plaintiffs move for class certification of two of their twelve claims: Count VII, seeking an order compelling the named oil companies to comply with the Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., with regard to securing permits for wells on his and all similarly situated properties in Osage County, Oklahoma; and Count IX, seeking invalidation of the arbitration procedures, 25 C.F.R. § 226, et seq., promulgated under the Osage Allotment Act of 1906. Dkt. # 118, Second Amended Complaint. The Court will address each claim for class certification separately.

In determining whether a class should be certified, the Court should not delve into the merits of the action. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it."). However, the Supreme Court has recognized that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) (citations and internal quotations omitted). The Court must accept the substantive allegations of the complaint as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiffs complaints." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (quotation omitted); see Shook v. El Paso County, 386 F.3d 963, 968 (10th Cir. 2004). "The decision to grant or deny certification of a class belongs within the discretion of the trial court." Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988).

## I.

Doug and Marie Martin own and reside on land in Osage County, Oklahoma. Much of their land in Osage County was obtained by Doug Martin's family through federal allotment.[1] According to plaintiffs, they have engaged in real estate development, primarily of their land in Osage County,

---

[1] "Congress passed the Osage Allotment Act ('Act'), 34 Stat. 539, in 1906 in part for the purpose of dividing the land in the Osage Reservation among the members of the Osage Tribe. Coincidentally, the Act established a subsurface mineral estate trust, held by the United States, on behalf of the Osage Tribe. Id. at § 2.7." Quarles v. U.S., ex rel. Bureau of Indian Affairs, 372 F.3d 1169, 1172 (10th Cir. 2004).

as their principal means of income for over twenty-five years. Plaintiffs seek to bring suit against oil companies and administrative agencies on behalf of individuals similarly situated.

Defendant AMVEST Osage, Inc. ("AMVEST") owns and operates natural gas wells in Osage County, including two wells on plaintiffs' land. Plaintiffs allege that, in connection with these and other wells, AMVEST and its affiliates have constructed roads, a pipeline, and access routes to other wells on their land and throughout Osage County. Plaintiffs further allege that the gas excavation activities of AMVEST and its affiliates have contributed to the pollution of the waterways in Osage County in violation of the CWA. In particular, plaintiffs claim that AMVEST has failed to obtain a National Pollutant Discharge Elimination System ("NPDES") permit as required for certain activities being carried out in Osage County.

To redress alleged surface land damage, plaintiffs engaged in arbitration, as directed by federal regulations.[2] Plaintiffs' arbitrator, Richard Comfort, and AMVEST's arbitrator, Bill Mashunkashey, could not agree on a third party arbitrator. Therefore, the government assigned Bill Malaske to facilitate arbitration for the parties. Malaske and Mashunkashey determined the arbitrated settlement for damage to plaintiffs' land to be $12,682. Dkt. # 131, Ex. I. Comfort maintained his objection to this settlement amount and claimed that plaintiffs were entitled to recover $636,250.[3] Plaintiff accuses Malaske of not being a truly "disinterested" party, as required

---

[2] Regulations governing disputes between surface land owners and companies holding extraction leases require that aggrieved parties take administrative steps towards successful resolution. See 25 C.F.R. § 226.21. If parties fail to adjust the claim and commence arbitration, regulations require the arbitration be guided by a "disinterested" third party arbitrator who is either selected by both parties or is appointed by the government. Id.

[3] One key factor in arbitration, which accounts for the large discrepancy between Comfort's valuation of plaintiffs' land and the settlement amount, was whether the land was classified as agricultural or whether it could be subdivided for future development.

under law, because Malaske allegedly subsists on royalty payments his wife receives from the Osage Tribe as an owner of an interest in a headright. Based on their arbitration experience, plaintiffs now ask the Court to prohibit the Bureau of Indian Affairs ("BIA") from appointing arbitrators, given the agency's role in securing profit from the mineral rights in the land.[4]

Plaintiffs' second proposed class consists of "all persons and entities in Osage County, Oklahoma, who have been subjected to 'arbitrations' that are illegal and contrary to the requirement that arbitrators be 'disinterested.'" Dkt. # 118, at 22, Second Amended Complaint. Essentially, plaintiffs challenge the legality of the arbitration process and accuse the government agencies of violating the law by allegedly failing to appoint objective third-party arbitrators. 25 C.F.R. § 226.21(d).

## II.

Plaintiffs seek to certify a CWA class on behalf of "all persons and entities in Osage County, Oklahoma, whose lands and water resources have been damaged by the AMVEST Defendants' and John Doe Oil Company's failure to comply with the requirements of the Clean Water Act," for the purpose of injunctive relief. Dkt. # 118, at 22, Second Amended Complaint. Such claim was brought pursuant to section 505(a)(1) of the CWA, which authorizes "citizen suits" seeking injunctive relief against an alleged violator of the CWA. 33 U.S.C. § 1365(a)(1). However, class actions are not authorized under the CWA, which authorizes a citizen to "commence a civil action

---

[4] The Department of Interior ("DOI") and the BIA have a federal trust obligation to administer the Osage mineral estate for the benefit of headright holders. See Quarles, 372 F.3d at 1172 ("The Secretary of the Interior is directed to manage oil and gas extraction leases, with the royalties earned form the leases reserved to the Osage Tribe.").

4

on his own behalf."[5]  Id.  The plain language of the statute does not authorize citizens to bring suit on behalf of others similarly situated.  See Quarles v. United States, 372 F.3d 1169, 1172 (10th Cir. 2004) ("In analyzing the language of the statute, we attempt to 'give effect to its meaning,' and construe the words of the statute in their ordinary sense.") (citations omitted).  This construction of the CWA is explained by the Senate Report, which states:

> Section 505 does not authorize a 'class action.'  Instead, it would authorize a private action by any citizen or citizens acting on their own behalf.  Questions with respect to traditional 'class' actions often involve: (1) identifying a group of people whose interest have been damaged; (2) identifying the amount of total damage to determine jurisdiction qualification; and (3) allocating any damages recovered.  None of these is appropriate in citizen suits seeking abatement of violations of water pollution control requirements.

S. Rep. No. 92-414 (1971), as reprinted in 1972 U.S.C.C.A.N. 3668, 3746; see Evansville v. Kentucky Liquid Recycling, 604 F.2d 1008, 1014 (7th Cir. 1979).

Regardless, plaintiffs' attempt to certify a CWA class would fail under Rule 23 due to similar deficiencies as those of the proposed Osage Arbitration class.  Even assuming plaintiffs' proposed CWA class was eligible for certification, plaintiffs fail to satisfy Rule 23.  Fed. R. Civ. P. 23.  Plaintiffs request injunctive relief and, thus, seek certification pursuant to Rule 23(b)(2).  Rule 23(b)(2) provides that a class action may be maintained under that subsection only if "the party opposing te class has acted or refused to act on grounds generally applicable to the class, thereby

---

[5]  In their reply, plaintiffs argue that their CWA claim does not fall under the "citizen suit" provision but, rather, is an independent action to enforce the CWA against AMVEST. However, this attempt to circumvent the "citizen suit" limitations set by the CWA fails. Based on plaintiffs' pleadings, AMVEST allegedly violated the CWA and plaintiffs ask the Court to apply CWA requirements to AMVEST operations.  Dkt. # 110, Second Amended Complaint, at 22, 30.  Therefore, their request for "an order from this Court that the AMVEST Defendants must comply with the law" falls under the rubric of section 505 and is confined by the statutory language which restricts such actions to individual actions.

5

making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). However, "Plaintiffs simply have not articulated a policy-besides generalized non-compliance with [the CWA]-that could be the subject of injunctive or declaratory relief." Montreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004). Accordingly, plaintiffs' request to certify a Clean Water Act class fails as a matter of law.

### III.

Plaintiffs' second proposed "Osage Arbitration Class" consists of "dozens to hundreds" of "surface owners in Osage County, Oklahoma, who have engaged in arbitration pursuant to 25 C.F.R. [§] 226 and have been paid land damages for the construction or operation of an oil, gas or coal bed methane well on their property within the prior six years." Dkt. # 131, at 7. This class definition is specific and, accordingly, class members are easily ascertainable.

"The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a)." J.B., 186 F.3d at 1287-88; see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) ("Rule 23(a) states four threshold requirements applicable to all class actions"). In addition, the class must fit within one of the categories of actions described in Rule 23(b). Plaintiffs attempt to certify this class for injunctive relief under Rule 23(b)(2). First, however, to achieve class certification, plaintiffs must satisfy the provisions of Rule 23(a), which provides in relevant part:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four prerequisites to a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. See generally, Ortiz v. Fibreboard Corp., 527 U.S. 815, 828 n.6 (1999). Plaintiffs have the burden of demonstrating that the requirements of Rule 23(a) have been satisfied. Reed, 849 F.2d at 1309.

With regard to the proposed "Osage Arbitration Class," plaintiffs fail to satisfy all the Rule 23(a) requirements. First, plaintiffs fail to satisfy the numerosity prerequisite. One or more members of a class may sue or be sued as representative parties of behalf of all if the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Numerosity considers the size of the proposed class, geographic dispersion of its members, and whether the members' names are easily ascertainable. Plaintiffs argue that there have been "dozens to hundreds" of arbitrations for land damages in Osage County. All members live in Osage County and their names are easily ascertained through records of past arbitrations. Thus, joinder of parties is neither "difficult [n]or unjust." Horn v. Assoc. Wholesale Grocers, Inc., 555 F.2d 270, 273 (10th Cir. 1977).

Next, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Rule 23(a)(2) does not require plaintiffs to show that all facts or legal issues are common to the class. Rather, plaintiffs "must demonstrate that there is at least one question of law or fact common to the class." Realmonte v. Reeves, 169 F.3d 1280, 1285 (10th Cir.1999). Without judging the merits of the case, the Court finds that plaintiffs have demonstrated that their case revolves around the common questions of whether:

> it is possible for the BIA to appoint a disinterested arbitrator in light of the BIA's responsibility to promote the development and production of oil and gas from the Osage mineral estate, and its interest in receiving payments from the Osage mineral estate.

Dkt. # 118, at 23, Second Amended Complaint. Therefore, this Court finds that the plaintiffs satisfied the commonality standard.

However, the proposed "Osage Arbitration Class" fails to satisfy the requirement that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement is related to both the commonality and adequacy of representation requirements. As the Supreme Court has noted:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

Falcon, 457 U.S. at 157 n.13. At the same time, the typicality prong is a distinct requirement intended to preclude class certification where the named plaintiffs' claims or defenses conflict with those of proposed class members.

The claims of plaintiffs are unique to the facts and evidence pertinent to their arbitration and are, thus, not typical of the claims of the members of the class. An analysis of the bias of all individual arbitrators would necessarily differ from arbitration to arbitration. Individualized inquiries would be required to determine exhaustion of administrative remedies and the applicable statute of limitations as the putative class spans six years. As a result, it is difficult to conclude that plaintiffs' claims are typical of the class. Given the potential legal differences between the plaintiffs' claims and those of the class members, the Court doubts that plaintiffs' claims are typical of the class and, therefore, holds that the representative's claims are not typical of the classes.

Under Rule 23(a)(4), in order for plaintiffs to be fair and adequate representatives of the class, three requirements must be met: counsel must be qualified, experienced, and generally able to conduct the proposed litigation; the class representatives must have sufficient interest in the outcome to ensure vigorous advocacy; and the class representatives must not have antagonistic or conflicting interests with other members of the proposed class. The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Windsor, 521 U.S. at 625. Defendants do not contest that the plaintiffs' attorney is qualified, experienced, and able generally to conduct the proposed litigation. Instead, they challenge the representation of the named plaintiffs on the grounds that they have conflicting interests with the proposed class members and are subject to unique defenses. Accordingly, plaintiffs are not typical of the class and, thus, they are not adequate class representatives.

For the reasons stated above, neither of plaintiffs' proposed classes qualifies for class certification.

**IT IS THEREFORE ORDERED** that plaintiffs' motion for class certification (Dkt. # 131) is **denied.**

**DATED** this 1st day of May, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT